IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CITY NATIONAL BANK, N.A.,<br><br>Plaintiff,<br><br>v.<br><br>JACK L. BRESLIN and JULIE A. BRESLIN, TRUSTEES OF THE BRESLIN FAMILY TRUST, and WALTER L. BRESLIN, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:12-cv-00939<br><br>Judge Clark Waddoups |

## INTRODUCTION

This matter is before the court on Plaintiff's Motion for Summary Judgment [Dkt. No. 28], Plaintiff's Motion for Summary Judgment (Quiet Title and Declaratory Judgment) [Dkt. No. 37], defendants' Motion to Strike Plaintiff's Reply Memorandum in Response to Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment [Dkt. No. 44], and defendants' motion to reform their trust deed. [Dkt. No. 54.]  The court held a hearing on Plaintiff's Motion for Summary Judgment on November 5, 2014 and requested that the parties provide additional briefing. The court held a hearing on all three motions on August 25, 2015 and requested the parties to provide further briefing. Defendants then moved the court to reform their trust deed. [Dkt. No. 54.]  The court also ordered the parties to submit supplemental briefing on the legal and factual applicability of UTAH CODE ANN § 25-6-6(2) to this dispute. A

1

final hearing on all motions and supplemental briefing was held on March 17, 2016.  After careful consideration of the parties' oral arguments and review of the pleadings and relevant legal authorities, the court DENIES defendants' Motion to Strike Plaintiff's Reply Memorandum [Dkt. No. 44],  DENIES Plaintiff's Motion for Summary Judgment [Dkt. No. 28], DENIES Plaintiff's Motion for Summary Judgment (Quiet Title and Declaratory Judgment) [Dkt. No. 37], and DENIES defendants' motion for reformation [Dkt. No. 54] for the reasons stated below.

## BACKGROUND

Jack and Julie Breslin are trustees of the revocable intervivos Breslin Family Trust. Walter Breslin is Jack's father, and is the sole remaining settlor and trustee of his own separate revocable intervivos trust known as the Breslin Trust. The Breslin Family Trust and Jeff Susa, Jack's business partner, are the members of IDC Decatur, LLC, which was created for the sole purpose of being the general partner for EP Decatur, L.P., which was formed in 2005 to acquire, develop, improve, and operate a property in Las Vegas, Nevada (the "EP Property"). On December 20, 2005, EP Decatur executed a promissory note in favor of the Breslin Trust, in exchange for Walter, through his Breslin Trust, loaning $850,000 to EP Decatur. The Breslin Trust loan is secured by a deed of trust in the EP Property that is in second position behind a $4,400,000 Bank of Nevada deed of trust in the EP Property. Jack Breslin and Jeff Susa, on behalf of EP Decatur, also each personally guaranteed the Bank of Nevada loan. At the time the EP Property was purchased, its value was allegedly $5.9 million; by the end of 2009, its value had allegedly dropped to $2.5 million, which meant that Walter's Breslin Trust loan had become undersecured. The Breslin Trust received interest payments on its loan for the first three years of the note, but EP Decatur defaulted on the principal payment when the note came due in

December 2008. EP Decatur continued making interest payments until June 2009, but missed a payment in July 2009. On August 19, 2009, Jeff Susa wrote Walter a letter explaining that the economic downturn in particularly hard-hit Nevada prevented payment of the principal, but that EP Decatur would resume making interest payments until such time as it could arrange to repay the principal. The Breslin Trust then received some reduced payments intermittently, after which payments ceased entirely in March 2010. Walter was aware that the value of the EP Property had declined significantly, and that he was unlikely to obtain any recovery of his loan by foreclosing his junior lien.

City National Bank is the successor in interest to a loan given to Jack Breslin and Jeff Susa in 2006 related to a separate Nevada property. The Breslin Family Trust is a guarantor of this loan. In May 2009 this loan went into default, eventually resulting in City National Bank obtaining a judgment against Jack Breslin, Jeff Susa, and the Breslin Family Trust (as guarantor) in the amount of $2,596,893.08. This judgment (the "Nevada Judgment") was entered July 12, 2011. City National Bank began attempts to collect the Nevada Judgment, including conducting a debtor's examination of Jack Breslin, at which time it learned of property owned by the Breslin Family Trust in Park City, Utah. On February 27, 2012, City National Bank filed a Notice of Domestication of Foreign Judgment in the Third District Court of the State of Utah. The Clerk of Court mailed this notice to Jeff Susa, Jack Breslin, and the Breslin Family Trust on March 5, 2012. The domesticated Abstract of Judgment for the Nevada Judgment was subsequently entered by the Clerk of Court on April 4, 2012. City National Bank recorded a Lis Pendens on the Park City property on October 10, 2012.

On March 9, 2012, the Breslin Family Trust, as Trustor, executed a Deed of Trust and Assignment of Rents (the "Trust Deed") in favor of Walter L. Breslin, as Beneficiary. It was recorded in the Summit County Recorder's Office on March 12, 2012. The Trust Deed states that its purpose was to secure "(1) payment of the indebtedness evidenced by a promissory note in the principal sum of $850,000.00, made by Trustor, payable to the order of Beneficiary at the times, in the manner, and with interest as therein set forth. . ."  At the time of the transfer, the Park City property valued at approximately $895,000 was nearly fully encumbered by a $1,000,000 Wells Fargo line of credit. The record is unequivocal that no promissory note existed between the Breslin Family Trust (the Trustor) and Walter L. Breslin (the Beneficiary). Jack's EP Decatur partner, Jeff Susa, and his wife executed a similar Deed of Trust and Assignment of Rents for property in California in favor of the Breslin Trust on March 1, 2012, for the purpose of securing "(1) payment of the sum of $850,000.00, with interest thereon according to the terms of a promissory note or notes of even date herewith  . . ."  The Susa trust deed was subsequently set aside as a fraudulent transfer by the Superior Court of California on June 18, 2014. In this case, City National Bank seeks to set aside the March 9, 2012 Trust Deed as a fraudulent transfer pursuant to Utah's Uniform Fraudulent Transfer Act or to quiet title of the property in the Breslin Family Trust. The defendants seek equitable relief to reform their Trust Deed with retroactive effect to reflect that they intended it to secure the December 20, 2005 promissory note between EP Decatur and the Breslin Trust.

## MOTION TO STRIKE

Defendants filed a Motion to Strike plaintiff's reply to defendants' opposition to plaintiff's quiet title and declaratory judgment summary judgment motion on DUCivR 7-1(b)(3)

grounds that it was untimely filed on April 22, 2015. Plaintiff's reply memorandum was due on

March 23, 2015. Plaintiff claims it believed that an extension of time had been offered by

counsel via e-mail. [Dkt. No. 46.]  Defendants dispute that an extension of time was actually

requested and granted, particularly one of this length. [Dkt. No. 47.]  A hearing on this motion as

well as both summary judgment motions was held on August 25, 2015. The parties argued the

summary judgment motions as if no objection to plaintiff's reply memorandum had been made.

Accordingly, the court finds no cognizable reason to strike plaintiff's reply memorandum and

hereby DENIES defendants' Motion to Strike.

## DISCUSSION

I.      **Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a). "A 'material fact' is one which could have an impact on the outcome of the lawsuit, while

a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-

moving party based on the evidence presented." *Chasteen v. UNISIA JECS Corp.*, 216 F.3d

1212, 1216 (10th Cir. 2000). "Only disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment. Factual disputes

that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248 (1986). The moving party bears the initial burden of showing the absence of a genuine

issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then

shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for

trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); FED. R.

CIV. P. 56(e). All justifiable inferences arising from the underlying facts must be viewed in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587.

## II.     Fraudulent Transfer

City National Bank seeks summary judgment pursuant to both UTAH CODE ANN. § 25-6-5(1) (transfer with intent to defraud) and UTAH CODE ANN. § 25-6-6(1) (transfer without value by an insolvent debtor). With respect to intent to defraud, under Utah's Uniform Fraudulent Transfer Act, a transfer is fraudulent as to a creditor if the debtor made the transfer "with actual intent to hinder, delay, or defraud," UTAH CODE ANN. § 25-6-5(1)(a). With respect to a creditor whose claim arose before the transfer was made, a transfer is fraudulent if (1) the debtor did not receive "a reasonably equivalent value in exchange for the transfer" and (2) "the debtor was insolvent at the time or became insolvent as a result of the transfer or obligation." UTAH CODE ANN. § 25-6-6(1).

### A.  Transfer With Intent to Defraud (UTAH CODE ANN. § 25-6-5(1))

To determine "actual intent" to defraud under UTAH CODE ANN. § 25-6-5(1)(a), the court may consider the "badges of fraud" outlined in the statute. *Rupp v. Pearson*, 2015 U.S. Dist. LEXIS 170708. These "badges of fraud" include

> (a) the transfer or obligation was to an insider; (b) the debtor retained possession or control of the property transferred after the transfer; (c) the transfer or obligation was disclosed or concealed; (d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (e) the transfer was of substantially all the debtor's assets; (f) the debtor absconded; (g) the debtor removed or concealed assets; (h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (j) the transfer occurred shortly before or shortly after a substantial debt

> was incurred; and (k) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

UTAH CODE ANN. § 25-6-5(2).

"The existence of one or more of these badges in a case does not necessarily constitute fraud per se, nor is the presence of one or more of the elements conclusive." *United States v. Barson*, 1999 U.S. Dist. LEXIS 12251 (D. Utah 1999). Where there are multiple plausible inferences to be drawn from the underlying evidence as to the alleged badges of fraud, summary judgment should not be granted unless the undisputed facts support an inference of fraudulent intent. *See Wasatch Oil & Gas, L.L.C. v. Reott*, 2007 UT App 223, ¶¶ 34-36.  Actual fraud "must be established by clear and convincing evidence." *Territorial Sav. & Loan Ass'n v. Baird*, 781 P.2d 452, 462 (Utah Ct. App. 1989).

The undisputed facts supporting City National Bank's position include elements (a) ("the transfer or obligation was to an insider"), (b) ("the debtor retained possession or control of the property transferred after the transfer"), (g) ("the debtor removed or concealed assets"), and (i) ("the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred"). UTAH CODE ANN. § 25-6-5(2).  First, the parties do not dispute that because Walter Breslin is Jack's father, the Trust Deed was granted to an insider as Walter falls within the definition of an "insider."  Second, the parties do not dispute that Jack and Julie Breslin retained possession of the Park City property after their Breslin Family Trust granted a second position security interest to Walter. Although this is an undisputed fact, the court also notes that it may be "an unwarranted leap to infer fraud anytime a person transfers a security interest in an item and maintains possession of it." *Gullickson v. Brown (In re Brown),* 108 F.3d

1290, 1293 (10th Cir. 1997) (contrasting the transfer of a security interest from the transfer of title to property). Third, as for (g) ("the debtor removed or concealed assets"), UTAH CODE ANN. § 25-6-5(2), neither party argues that the defendants concealed the Trust Deed. But City National Bank argues that granting Walter Breslin a security interest in the Park City property effectively removed it from the Breslin Family Trust. Defendants claim that the property ownership remains the same and therefore it was not removed from the trust. On this point, the court is persuaded that granting the security interest had the effect of removing the Trust Deed from the Breslin Family Trust for purposes of the Uniform Fraudulent Transfer Act. *See Gullickson*, 108 F.3d at 1293, n.1 ("there is no question that the grant of a security interest does constitute a transfer"). Practically speaking, however, because the Trust Deed purports to grant Walter Breslin a second position security interest behind a nearly fully exhausted $1,000,000 line of credit on a property that was valued at approximately $895,000 during that time period, *see* Dkt. No. 28-11 and Dep. of Jack Breslin, 17:22-18:12, it is difficult to see how the transfer removed the asset any further out of the bank's reach than it already was. The court therefore concludes that the effect of elements (b) and (g) in favor of the bank's position is de minimis.

Finally, with respect to element (i), City National Bank argues that the Breslin Family Trust was insolvent or became insolvent shortly after the Trust Deed was executed. The Uniform Fraudulent Transfer Act states that "a debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." UTAH CODE ANN. § 25-6-3(1). Alternatively, it states that "[a] debtor who is generally not paying his debts as they become due is presumed to be insolvent." *Id.* § 25-6-3(2). While the record reflects a dispute over the second, presumptive definition of insolvency, the court finds in the record undisputed evidence

of insolvency pursuant to the first definition, namely, that at the time the Trust Deed was executed the Breslin Family Trust had unencumbered assets of less than $2 million (Defs' Answers to Pl.'s Request for Admission, at No. 6; J. Breslin Dep., at 104:1-15) and liabilities of at least $2.5 million. (Nevada Judgment, Dkt. No. 28-6).

The undisputed facts supporting the Breslin defendants' position include elements (c) ("the transfer or obligation was disclosed or concealed") and (f) ("the debtor absconded"). UTAH CODE ANN. § 25-6-5(2). Because the Trust Deed was recorded in the Summit County Recorder's Office three days after execution, the parties agree that it was disclosed and not concealed. Similarly, the parties agree that the Breslin Family Trust did not abscond after execution of the Trust Deed.    Neither party argues that elements (j) ("the transfer occurred shortly before or shortly after a substantial debt was incurred") or (k) ("the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor") are at issue. UTAH CODE ANN. § 25-6-5(2).

There are genuine issues of disputed material facts relating to the remaining elements (d), (e) and (h). As for (d) ("before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit"), UTAH CODE ANN. § 25-6-5(2), City National Bank argues that the Breslin Family Trust and Jack Breslin personally had been "sued or threatened with suit" because they knew the Nevada Judgment had been issued in July 2011; Jack had participated in debtor examination proceedings; the Notice of Domestication of Foreign Judgment was filed in Utah in February 2012; and just four days prior to executing Trust Deed, the Third District Court clerk mailed Jack notice that City National Bank was domesticating its Nevada Judgment in Utah. Although the timing is suspect, "[t]he mere fact that a transaction occurred soon before [a

legal proceeding] does not necessarily support the inference of fraud. The circumstances of the transaction must be examined." *See Gullickson*, 108 F.3d at 1293. Jack Breslin admits that while he knew City National Bank had instituted collection efforts at least eight months previously, there was nothing presently pending and he did not know the Nevada Judgment was being domesticated in Utah at the time the defendants executed the Trust Deed and that had no bearing on the timing of the Trust Deed's execution. Dep. of Jack L. Breslin, 54:1-21; Decl. of Jack L. Breslin in Opp'n to Pls.' Mot. For Summ. J., ¶¶ 30-34 [Dkt. No. 30]. Viewing these facts in the light most favorable to defendants, the court finds that defendants have established a genuine issue of material fact as to element (d) because Jack Breslin's credibility on the timing issue requires evaluation by a fact-finder.

As for element (e) ("the transfer was of substantially all the debtor's assets"), UTAH CODE ANN. § 25-6-5(2), City National Bank argues that the transfer constituted substantially all of the debtor's assets because the Breslin Family Trust had more liabilities than assets and was not paying all of its debts as they became due. By so arguing, plaintiff is invoking the definitions of insolvency provided at UTAH CODE ANN. § 25-6-3. The Breslin Family Trust argues that because it still had assets of approximately $1.25 million at the time it executed the Trust Deed, granting the deed did not transfer substantially all of its assets. Decl. of Jack L. Breslin in Opp'n to Pls.' Mot. For Summ. J., ¶ 35 [Dkt. No. 30]. This court must "avoid construing a statute so as to render statutory language superfluous." *De Leon v. Lynch*, 808 F.3d 1224, 1233 (10th Cir. 2015). UTAH CODE ANN. § 25-6-5(2)(i) separately addresses insolvency as a badge of fraud, and the court will therefore not construe UTAH CODE ANN. § 25-6-5(2)(e) as a duplication of (i) which renders (e) superfluous. Therefore, because the court must view the Breslin Family Trust's

stated assets at the time the Trust Deed was executed in the light most favorable to them, the court finds that defendants have established a genuine issue of material fact as to whether the transfer constituted substantially all of the debtor's assets.

The most disputed element regarding the actual intent to defraud based on the badges of fraud is element (h) ("the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred"). UTAH CODE ANN. § 25-6-5(2).  City National Bank argues that the value of the consideration received by the Breslin Family Trust was not reasonably equivalent to the value of the asset transferred because the Breslin Family Trust has never been indebted to Walter Breslin, and because no new loan or note—let alone one supported by an exchange of consideration—was executed between Walter Breslin and the Breslin Family Trust at the time the Trust Deed was granted.

In response, defendants assert that EP Decatur, L.P., in which the Breslin Family Trust has an ownership interest as a member of IDC Decatur, LLC, is indebted to Walter Breslin and/or his trust. This indebtedness is in the form of the December 20, 2005 promissory note for $850,000 executed by EP Decatur in favor of Walter's Breslin Trust in exchange for a cash investment in the EP Property, the principal and interest payments for which investment EP Decatur has been unable to pay the Breslin Trust since approximately 2010. Defendants further assert that Walter agreed not to foreclose on the EP Property in exchange for the Breslin Family Trust granting him an $850,000 second position security interest in the Park City property, which constitutes reasonably equivalent value for the transfer. Decl. of Jack L. Breslin in Opp'n to Pls.' Mot. For Summ. J. [Dkt. No. 30], Decl. of Walter L. Breslin in Opp'n to Pls.' Mot. For Summ. J. [Dkt. No. 31]. The legal and factual issues surrounding this element require the court to

determine whether the Trust Deed is ambiguous and requires interpretation, and to examine

whether prohibited third party consideration or the receipt of an indirect benefit supports an

exchange of reasonably equivalent value.

To begin with, the Trust Deed's recitation of an undisputedly nonexistent promissory

note in the first numbered paragraph regarding what the deed was intended to secure raises the

question of whether the deed is simply invalid. If the Trust Deed is invalid, then there is no

"transfer" pursuant to the Uniform Fraudulent Transfer Act. *See* UTAH CODE ANN. § 25-6-2(12).

This question and the claims defendants raised in rebuttal of element (h) require the court to

interpret the Trust Deed.

### 1.  Interpretation of Trust Deed

Deeds in Utah are "construed according to ordinary rules of contract construction."

*Panos v. Olsen & Assocs. Const., Inc.*, 2005 UT App 446 ¶ 15. The court first interprets deeds

based on "the intention of the parties as drawn from the whole deed," and then if the deed is still

ambiguous, the court looks to "contemporaneous writings on the same subject matter," and if

necessary to resolve the ambiguity, "to extrinsic parol evidence." *Id.* (internal quotations and

citations omitted).

Looking first to the "four corners of the instrument," *id.*, the Trust Deed on its face states

that it secures "payment of the indebtedness evidenced by a promissory note in the principal sum

of $850,000.00, made by Trustor [Trustees of the Breslin Family Trust], payable to the order of

Beneficiary [Walter L. Breslin] at the times, in the manner, and with interest as therein set forth

. . ." [Dkt. No. 28-8.] The deed is thus facially unambiguous; however, all parties admit that no

promissory note has ever existed between the Breslin Family Trust and Walter L. Breslin. For

the bank, this should end the inquiry pursuant to *Diderickson v. Cyprus Credit Union et al*, No. 2:10-CV-00211, 2013 WL 6056598 (D. Utah Nov. 15, 2013) (denying request to rewrite deed of trust that referred to nonexistent loan and promissory note). The purpose of contract interpretation, however, is to "ascertain the intentions of the parties to the contract." *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 17. Analysis of defendants' intentions is especially needed here because the plaintiff has asked the court to grant summary judgment on the basis of intent to defraud. Therefore, the court must "allow the introduction of relevant evidence regarding the existence of a potential ambiguity to prevent an inherently one-sided analysis." *Watkins v. Ford*, 304 P.3d 841, 847 (Utah 2013) (internal quotations and punctuation omitted).

Looking next to "contemporaneous writings on the same subject matter," *Panos*, 2005 UT App 446 at ¶ 15, the court notes that while there are no contemporaneous writings between the parties to the Trust Deed that reflect their intent, Jack Breslin's EP Decatur business partner and his wife, Jeff and Jill Susa, executed a similar deed of trust on their California property in favor of Walter's Breslin Trust on March 1, 2012, three days prior to the execution of this Trust Deed, for the purpose of securing "(1) payment of the sum of $850,000.00, with interest thereon according to the terms of a promissory note or notes of even date herewith. . ." [Dkt. No. 28-12.] This writing at least suggests that both partners of EP Decatur were obligated to the Breslin Trust for a promissory note in the amount of $850,000, although the Susa deed does not resolve the ambiguity because first, it does not mention EP Decatur; second, it is not a contemporaneous writing between the parties to this Trust Deed; and third, it does not reflect the December 20, 2005 date of the actual promissory note between EP Decatur and the Breslin Trust.[1]

---

[1] Furthermore, as noted above, the Susa deed has already been set aside as a fraudulent transfer.

Accordingly, because "Utah's rules of contract interpretation allow courts to consider *any* relevant evidence to determine whether a latent ambiguity exists in contract terms that otherwise appear to be facially unambiguous," *Watkins*, 304 P.3d at 847, the court considers defendants' pleadings, declarations, and deposition testimony, all of which claim that the defendants intended for the Trust Deed to secure the December 20, 2005 promissory note between EP Decatur and the Breslin Trust in the amount of $850,000, which is the same amount recited in the Trust Deed. Defendants claim that they inartfully drafted the Trust Deed because they were not assisted by counsel when filling out a deed form provided by a title company. These facts viewed in the light most favorable to defendants raise a genuine issue of material fact about their intent, which prevents the court from granting summary judgment on the basis that the deed is invalid. If the parties' actual intent was for the Trust Deed to reference the December 20, 2005 promissory note, this latent ambiguity also eliminates the bank's argument that the Trust Deed is ineffective to secure a promissory note that is separate from the promissory note expressly identified in the deed, because the deed would secure the same note it references, which has not been separated from the deed.[2] Next, then, the court must determine whether reasonably equivalent value was exchanged between the Trust Deed parties when interpreted consistent with defendants' claimed intent.

### 2. Reasonably Equivalent Value

The Uniform Fraudulent Transfer Act provides that "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent

---

[2] Plaintiff has also persuaded the court that this argument has little merit in the context of this case based on its reading of *Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration System, Inc.*, 263 P.3d 397 (Utah Ct. App. 2011).

debt is secured or satisfied." UTAH CODE ANN. § 25-6-4. Defendants' claim that the Trust Deed is intended to secure the antecedent debt between EP Decatur and the Breslin Trust raises several legal issues that the court must address prior to factually examining whether the Trust Deed secures or satisfies an antecedent debt.

First, City National Bank argues that the Breslin Family Trust's attempt to satisfy EP Decatur's obligation to Walter's Breslin Trust is prohibited third party consideration in the fraudulent transfer context pursuant to *Dahnken, Inc. v. Wilmarth*, 726 P.2d 420 (Utah 1986). *Dahnken* was an action to set aside the assignment of a real estate contract brought under an earlier iteration of the Utah Fraudulent Conveyance Act. *Id.* There, the stepfather transferee argued that his payments of debts owed by the transferor's businesses were personal loans to the transferor and thus constituted fair consideration for the assignment of the contract.[3] *Id.* The court determined that "an otherwise fraudulent transfer is not made nonfraudulent" because a transferee pays an obligation owed by a third party to the assignment (in this case, the business corporation set up by the transferor stepson). *Id.* The court further held that "[s]atisfaction of an obligation owed the transferee by a third party does not qualify as fair consideration [under the earlier iteration of the Utah Fraudulent Conveyance Act]." *Id.* Second, City National Bank also argues that because the Breslin Family Trust, Jack Breslin, EP Decatur, IDC Decatur, Walter Breslin, and the Breslin Trust are all separate legal entities, the Breslin Family Trust cannot be held personally liable to Walter for the promissory note between EP Decatur and the Breslin Trust. *See United States v. Bestfoods*, 524 U.S. 51, 61-62 (1998); *Burnet v. Clark*, 287 U.S. 410,

---

[3] "'Fair consideration' is a predecessor term to 'reasonably equivalent value,' and serves a similar function to the latter term in the fraudulent transfer context." *Klein v. King & King & Jones*, 571 Fed. Appx. 702 (10th Cir. 2014) (unpublished).

415 (1932). Thus, plaintiff argues, the parties to the Trust Deed could not have exchanged reasonably equivalent value for the Trust Deed because the Breslin Family Trust had no obligation for EP Decatur's debt.

It is true that "[o]rdinarily, a corporation is regarded as a separate and distinct legal entity from its stockholders [for the purpose of insulating] the stockholders from the liabilities of the corporation. *Salt Lake City Corp. v. James Constructors*, 761 P.2d 42, 46 (Utah Ct. App. 1988) (quotations and citation omitted). Liability for corporate stockholders is thus limited to the amounts that they "voluntarily put at risk." *Id.* In this case, defendants assert that the Breslin Family Trust invested $250,000 in EP Decatur through IDC Decatur, which investment would be placed at risk in the event Walter Breslin, as Trustee of the Breslin Trust, foreclosed on the EP Property. Under the "indirect benefit theory" discussed further below, defendants allege that in exchange for Walter's forbearance from foreclosing on the EP Property, granting the Trust Deed enabled the Breslin Family Trust to protect its $250,000 investment in EP Decatur, protect its ongoing business interest in the EP Property itself, and protect Jack Breslin personally from a deficiency judgment as guarantor of the EP Property loan. Thus, if a benefit of reasonably equivalent value flowed indirectly from EP Decatur to the Breslin Family Trust, the Trust Deed would not be supported by prohibited third party consideration pursuant to *Dahnken*.

The "indirect benefit theory" of reasonably equivalent value in the fraudulent transfer context was acknowledged by this court in *Wing v. Harrison*, No. 2:03-CV-26, 2004 WL 966298, *3 (D. Utah April 29, 2004) (citing to *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979 (2d Cir. 1981)). "The *Rubin* court states that a 'debtor may sometimes receive 'fair' consideration even though the consideration given for his property or obligation goes initially to

a third person.'" *Id.* The indirect benefit theory is also available in a similar context in bankruptcy. *In re Brooke Corporation*, 541 B.R. 492, 511 (D. Kansas 2015). A "payment made solely for the benefit of a third party, such as a payment to satisfy a third party's debt, does not furnish reasonably-equivalent value to the debtor. An exception to this rule has been recognized where a debtor receives an indirect benefit from paying or guaranteeing the obligation of a third party." *Id.* (internal quotations omitted).

Defendants' indirect benefit theory of defense raises a host of disputed factual issues regarding reasonably equivalent value, including whether there is enough value in the Breslin Family Trust's interest in EP Decatur to support an exchange of a second position security interest in an $850,000 Trust Deed; whether there is any contemporaneous—rather than merely self-serving, after-the-fact—evidence that Walter, through the Breslin Trust, actually intended to foreclose on the EP Property to support its exchange of forbearance as consideration for the Trust Deed; and whether even an actual threat to foreclose on the EP Property was a legitimate exchange of consideration when all defendants agree that the EP Property had a market value millions of dollars less than the book value of its loan so that foreclosure of Walter's junior lien would not result in recovery on the Breslin Trust note in any event.

In summary, defendants have raised disputed issues of material fact about whether the deed is invalid and thus cannot constitute a "transfer" under the Uniform Fraudulent Transfer Act, and about whether the transfer itself was actually fraudulent. Four elements of the statute's eleven "badges of fraud" support City National Bank's position (although two elements only provide weak support), two elements support defendants' position, two are not at issue in the case, and the remaining elements are disputed. At least one of those elements—the exchange of

reasonably equivalent value—is in significant dispute. Although all badges of fraud need not be present to support an inference of actual fraudulent intent, those that are present must support an inference of actual fraud. *See Wasatch Oil* 2007 UT App 223 at ¶¶ 34-36.  Actual fraudulent intent cannot be inferred by reference to the "badges of fraud" in this case without weighing of the evidence by a fact-finder. *See Selvage v. Johnson*, 910 P.2d 1252, 1262 (Utah Ct. App. 1996). Therefore, the court DENIES summary judgment on actual fraud pursuant to UTAH CODE ANN. § 25-6-5(1).

**B.   Transfer Without Value By Insolvent Debtor (UTAH CODE ANN. § 25-6-6(1))**

A transfer is constructively fraudulent as to a creditor "whose claim arose before the transfer was made" if (1) the debtor did not receive "a reasonably equivalent value in exchange for the transfer" and (2) "the debtor was insolvent at the time or became insolvent as a result of the transfer or obligation."  UTAH CODE ANN. § 25-6-6(1). As described above, with respect to the element of insolvency, the court has found undisputed evidence in the record that the Breslin Family Trust was insolvent at the time the deed was executed. Notwithstanding that the insolvency element has been met, the court also identified above that the defendants have successfully raised genuine issues of material fact regarding whether "reasonably equivalent value" was exchanged. Therefore, the court DENIES summary judgment as to constructive fraud pursuant to UTAH CODE ANN. § 25-6-6(1).

**III.   Quiet Title and Declaratory Judgment**

City National Bank asks the court to quiet title to the Park City property in the Breslin Family Trust because the Trust Deed is void due to its recitation of a nonexistent promissory note and a lack of consideration. The bank also argues that the court should not interpret the deed

to reach the December 20, 2005 promissory note between the Breslin Trust and EP Decatur because the language of the deed is not ambiguous and does not support the interpretation. *Daines v. Vincent*, 2008 UT 51 ¶ 30. Furthermore, even if the court does interpret the deed to reach the December 20, 2005 promissory note, the bank argues that the promissory note is an antecedent debt of a third party to the deed and such debts cannot be secured by a trust deed without additional consideration. *Diderickson*, 2013 WL 6056598. Finally, City National Bank argues that a trust deed is ineffective to secure a promissory note that is separate from the promissory note expressly identified in the deed. *Commonwealth*, 2011 UT App 232.

Each of these arguments has been addressed in the context of plaintiff's Uniform Fraudulent Transfer Act claim. *See supra* Section II.A. To review, the court has determined that it must interpret the Trust Deed and has found a latent ambiguity, about which there are disputed issues of material fact that prevent the court from finding the deed invalid on summary judgment. *Panos*, 2005 UT App 446. The court has also found that there are disputed issues of material fact about whether the Breslin Family Trust received an indirect benefit from Walter's alleged forbearance (about which there are similarly disputed issues of material fact). Therefore, the court cannot yet determine whether *Dahnken's* prohibition on using third party payment of antecedent debt as consideration applies. Finally, because there are disputed issues of material fact about whether the parties actually intended for the Trust Deed to secure the December 20, 2005 Trust Deed, plaintiff's final argument also cannot prevail on summary judgment. Accordingly, the court DENIES summary judgment on the quiet title action.

## IV.    Reformation

Defendants moved to reform the Trust Deed after the court asked the parties to address the implications for lien priority if the court were to reform the deed because of an alleged latent ambiguity. The latent ambiguity is that the Trust Deed is allegedly intended to secure the promissory note dated December 20, 2005 in the amount of $850,000 from EP Decatur in favor of the Breslin Trust, rather than as stated a "promissory note in the principal sum of $850,000.00, made by Trustor [The Breslin Family Trust], payable to the order of Beneficiary [Walter L. Breslin].

As a preliminary matter, a latent ambiguity may be reformed to render the contract enforceable *between the parties to the contract* as to the interpretation the court finds reflects the parties' true intent at the time they entered the contract. *Watkins*, 2013 UT 31 (emphasis added) (A "latent ambiguity . . . does not excuse the parties' obligations under the Contract because the parties were in agreement" as to the true intent). The issue in this case, however, is not whether Walter Breslin can enforce the Trust Deed against the Breslin Family Trust. Instead, the issue is whether reforming the Trust Deed is appropriate as against third parties who had no knowledge of the mistake and whether reformation would be retroactive to its original recording date.

"Reformation is an equitable remedy that permits the court to add new terms to a deed or alter the original language of a deed to conform to the parties' intent."  *FDIC v. Taylor*, 2011 UT App 416 ¶ 26. Mutual mistake of the parties as to what is written in the deed versus what was agreed upon by the parties is an appropriate ground for reformation. *Hottinger v. Jensen*, 684 P.2d 1271 (Utah 1984). The party seeking reformation has the burden of proving there was a mutual mistake of fact by clear and convincing evidence. *FDIC*, 2011 UT App 416 at ¶ 29. Upon

finding such proof, the court can "reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected." *Grahn v. Gregory*, 800 P.2d 320 (Utah Ct. App. 1990). *See also FDIC*, 267 P.3d at ¶ 51 (reformation "cannot be imposed retroactively if it would 'unfairly affect' the right of an innocent third party").

Defendants argue that there is clear and convincing evidence of only one intent in executing the Trust Deed, and that was to provide security to Walter Breslin for the antecedent $850,000 loan he made to EP Decatur. City National Bank argues that apart from self-serving testimony generated after-the-fact, there is no evidence before the court to gauge the veracity of the mistake. For example, there is no contemporaneous documentation of conversations between the defendants referencing the prior debt or suggesting that Walter Breslin was eager for additional security. The August 2009 letter from Jeff Susa as the general partner of EP Decatur to Walter Breslin makes no reference to Walter or the Breslin Trust threatening foreclosure or seeking additional security. [Dkt. No. 40-4.]  Walter Breslin's declaration suggests to the court that he understood that foreclosing on the EP Property would be futile because his trust deed in that property was unsecured due to an underwater senior lien held by the Bank of Nevada. [Dkt. No. 40.]  Further, the court does not see clear and convincing evidence that Walter had any desire to or had made any threat to foreclose the EP Property because Jack was his last remaining son and he saw him as being under a lot of pressure in his business. [Dkt. No. 28-7.]

Jack's declaration and deposition testimony also supports that he was well aware of City National Bank's collection efforts, which makes it difficult for the court to find clear and convincing evidence that the only intent Jack had in executing the Trust Deed was to secure his

father's antecedent debt. [Dkt. Nos. 28-1, 30.]  In an equitable proceeding that raises questions of fraudulent intent, the court must also consider Jack's awareness that the Park City property was already fully encumbered by a Wells Fargo line of credit when evaluating whether he actually intended to provide his father's loan with additional security at all. [Dkt. No. 28-1.]  In light of all of the foregoing, the court concludes that defendants have not met their burden of proving mutual mistake by clear and convincing evidence.

In the absence of clear and convincing evidence of mutual mistake in the execution of the Trust Deed, it is not necessary for the court to evaluate whether plaintiffs will be prejudiced by reformation of the deed. The court therefore DENIES defendants' motion for reformation of the Trust Deed.

## V.   Additional Briefing Requested On UTAH CODE ANN. § 25-6-6(2)

While this matter was under advisement, the court requested the parties to brief whether UTAH CODE ANN. § 25-6-6(2) was applicable to this action. In light of the court's decision herein, the court declines further analysis of this provision.

## CONCLUSION

For the foregoing reasons, the court DENIES defendants' Motion to Strike Plaintiff's Reply Memorandum [Dkt. No. 44],  DENIES Plaintiff's Motion for Summary Judgment [Dkt. No. 28], DENIES Plaintiff's Motion for Summary Judgment (Quiet Title and Declaratory Judgment) [Dkt. No. 37], and DENIES defendants' motion for reformation [Dkt. No. 54].

SO ORDERED this 29th day of March, 2016.

BY THE COURT:

The Honorable Clark Waddoups
United States District Court Judge